And we'll move on to Osorio v. Tile Shop, our fourth case this morning. Good morning. If it may please the court, I'm Mark Balgarelli on behalf of Plaintiff Appellant Adriel Osorio and the class. The issue before the court today is our advances that the defendant makes to its employees, cash advances, for purposes of regulations that govern cash advances and payroll deductions for an employer to recover. Defendant argues that what it does is something different. It essentially says, because it uses different words, calling them a recoverable draw, they somehow aren't a cash advance. But the clear answer is they are cash advances. If these weren't advances, why would the defendant be making deductions to payroll to repay itself then? First and foremost, the district court's order was in error. The district court found that these, in fact, looked like cash advances and found that they were payments on future earnings. But it added an additional requirement, which was incorrect. It found that the fact that the defendant, in a limited number of circumstances, doesn't seek to recover them and doesn't actually recover a limited number of these advances that the defendant calls draws, caused them to not be cash advances. Before you go too far down the road on your cash advance argument, would you address the argument raised about whether these are actually deductions from payroll to begin with? Well, they are deductions from payroll, Your Honor. The regulation question that triggers all this is 56 Illinois Administrative Code 300.750. I'm talking about the statute. Why are these considered? That's a regulation promulgated pursuant to statute. Are you referring to whether they're deductions from wages? Right. Are they deductions from wages? That's the threshold argument that your opponent makes. Yes, Your Honor. They are deductions from wages, but actually they don't even need to be here. First of all, laws and regulations, in effect, at the time of an agreement. So the 15% cap put in place by the regulations is an implied term. I'm actually talking about the statute. If these don't qualify as deductions from payroll, then the regulation doesn't matter. Your Honor, I think the defendant argues that they have to be deductions from wages, the defined term in the statute. We argue that they have to be deductions from payroll, what is what the regulation says. That's a more general term. They are, what I was getting to, Your Honor, is that they are deductions from wages, the defined term of the statute. But they don't need to be. They can be more general. Wages as defined in the statute, Section 2 of the IWPCA, is amount that is to be paid pursuant to an agreement. Right. And your opponent's argument is that the agreement encompasses this mode of calculating the compensation due. In other words, the recoupment of the draw. And so nothing is being deducted in the first place, whether it's a deduction from wages or a deduction from payroll. Assuming there's a distinction between those two things. Yes. Your Honor, their argument is this is just a way of calculating the wage. The problem with that is the agreements show that's not true. There's two contractual terms within the agreement. One that says this is what we pay you. It says that your compensation only consists of commissions. There's a separate contractual term, was the agreement regarding deductions and cash advances and deductions. So here we have an A and a B. This is why this case is in opposite to the Cohan case that was before this court. There, the negative component, what was a negative growth component, was part of the actual calculation of the commission. Part of the calculation of the compensation. This fully lays out what the from this earned compensation in certain situations. So there's two contractual provisions here, an A and a B. And your Honor, to further follow up on your question. There actually isn't a reference to making deductions from wages in the pay plan? They say that they are making deductions from the compensation. And actually, it doesn't say that. It says, Your Honor, that we will deduct. It says your compensation will be determined according to this set of rules. It doesn't talk about deductions from compensation once it's determined. It talks about how we determine compensation per pay period. And then it sets the $1,000 per pay period floor, or excuse me, guarantee, essentially, that regardless of these calculations, each sales associate will be guaranteed a minimum salary of $1,000 per month or $24,000, I'm sorry, per pay period, or $24,000 a year. You're totally correct in saying here's your total compensation. It's the other part of the pay plan, the page before it, says your pay is commission-based. So it's saying here's your compensation, that's what you get for wages. And then in a separate section, it's saying when your total compensation, your compensation for all your work, doesn't reach that amount, we'll give you a cash advance. And that's what we're arguing here. Is this a cash advance? Yes, they're advancing additional monies. It's a way of structuring the compensation. It's not a loan. It's a way of compensating you for employment that you've already performed, consideration you've already given, in a way that benefits the employee by guaranteeing a minimum wage. Well, Your Honor, it's not for work already performed. Here, it makes clear. The only work, you get paid, is commissions. Now, they're advancing future commissions, and the district court correctly said this is not work for work that's already performed. This is for future commissions. The only pay they get is commissions. They don't get anything for work that's already occurred. They're commission-only employees. So they do advance, but that's the whole purpose of a cash advance. A cash advance, as set out in the law, can cover minimum wage factors. It can do all these things. But the only, if they don't earn commissions, they don't get paid otherwise, except for advances. If these weren't cash advances, the simple fact is the fine would not be deducted. If they were for work already paid, that would be wage theft. You're earning less the next time to cover the fact that you underperformed in the prior pay period. I mean, if they were truly advances and not part of the compensation structure, how do you explain that the employee doesn't have to repay them for the first three months of employment or for the last month if the employee terminates? Sure. The first three months of employment is not even part of this case. Those are set out in the agreement as a different thing. No, I mean, I understand that's not part of what you're objecting to, but I'm saying that it reflects that this concept of the $1,000 isn't considered by the employer to be a cash advance. Moreover, it's the structure of the compensation. Well, that's what the district court got wrong, is the law, if your paradigm case, it's section 600 brief starting, says that cash advances, you don't get a recovery. That when you have a balance at the end of employment, just as occurred here, it's long held law in Illinois and other regulations support this. You cannot recover it unless you have an express agreement stating you get a recovery. So that is exactly what happened. What the district court did is the defendant was following the law on cash advances, treating them like cash advances, and in fact, the district court used an actual characteristic of a cash advance, that you can't always recover it, and turn that around and use that very characteristic to find it wasn't a cash advance. And to the earlier point I was making, if you look at the agreements in place, the ones at the beginning, those aren't even draw payments or the cash advances we're arguing about. Those are, they're called grace periods for training when sales aren't being done. The district court didn't consider them in here because they're something different. And the defendant here doesn't argue that the district court's holding was inerrant. Their response has zero response to our opening brief. Instead, they're just putting forth these new arguments that they're not cash advances because they're not for work performed, or because they say they're for work performed, and that they're not a deduction from wages. And it's important to note that the district court otherwise said the definition was met here. It said, otherwise this looks like cash advances under the definition. Defendant's arguments are not even properly before this court. There's an adverse finding to it from the district court that otherwise is met, and that these were not for work already performed. They were on future earnings. If it wanted to challenge an adverse finding to it as a winner in summary judgment, it needed to bring a cross appeal. No, that's not right. The judge doesn't make findings on summary judgment. There wasn't a bench trial. And the title shop is not trying to alter the rights that were determined by the trial judge at the time. That's the only circumstance under which a cross appeal would be required. It's just defending that judgment on a different ground that the district court did not reach. There's nothing improper about that. Yes, Your Honor. They also want to point out the defendant's arguments here. There is no expectation of an expectation when the law says you can't always recover them. And they say they have the guaranteed expectation. That's impossible. These also, as I was saying, these are deductions from wages because they're an implied term of the agreement. There's 15% limits. When they were making that deduction, they were deducting amounts that hadn't been paid on that paycheck. And by doing that, the agreement said you had to pay it now. By not doing it, they were making deductions to wages. The agreement also, as I said, sets out two distinct sections. Another quick point to make is defendant's argument is circular and actually leads to invalidating the entire regulation. What they are arguing is that you agree to this deduction and hence you're agreeing that it won't actually be paid at the end date. So hence it's not wage. Only the amounts after deduction could be wages. The problem with that is the law itself, and in fact there are parts of the IWPCA, say you must have a rent agreement for a deduction. So they're saying the very set of regulations that they say only covers deductions from wages also, according to it, take those very deducted amounts outside of ever being a wage. So you can never have a deduction from wages or final compensation, a written consent agreement by the employee given freely at the time the deduction is made. So if this was truly a deduction, it would require a payroll-by-payroll consent agreement from the employee. Taking your argument to the... The law in cash advances says it doesn't have to be payroll-by-payroll. That's in our section, I believe it's 720, Your Honor. And the district court found that it did not be payroll-by-payroll. We actually originally argued that prior to the complaint and ruled against us. But the point being is by having the agreement, their simple argument is nothing could ever be from a deduction by wage because you agreed to it because the law made you do it. If there's no further questions, I'll reserve my remaining time for rebuttal. It's fine. Mr. Sekulowski. Good morning, Your Honors, and may it please the court. Your Honor, Judge Sykes touched on the very issue that we asked Judge Connelly to dispose of the case on. We presented a number of alternate theories for disposal of this final claim in this litigation. And we believe that issue is dispositive and we wouldn't even have gotten to the point of kind of racking our brains over whether or not a cash advance is this or a cash advance is that. Rather, and very clearly, we think very simply, the IWPCA does not apply to the compensation practices of the tile shop because the IWPCA only regulates deductions from wages or final compensation. And what the tile shop does is they gross wage line reconciliation of prior draw balances or a prior draw balance against creditable commissions or other incentive income. And that has been a practice that many retailers, many retail companies engage in when they have a commission-based sales program. And if this was construed as a deduction under the statute, that would upend a great many of the agreements, would it not? That's right, Your Honor. I think you'd probably see a number of national retailers scooting out of the state of Illinois because this is the program that they put in place, the agreement they have with their employees. And the employees agree that prior to determining the wage, in fact, Mr. Bogarelli would probably be bringing a different lawsuit had we taxed his client on the creditable commissions and other incentive payment before we performed the offset or the reconciliation. So it's an above-the-line reconciliation of creditable commissions, other incentive payment, against the draw balance that has been carried forward. The Cone case is a Second Circuit, I'm sorry, a Seventh Circuit decision that's on point. A number of other cases that we've cited, page 16 and page 17 of our brief, support this practice, very, very common practice. It is an above-the-line reconciliation and frankly a mechanism for determining what the final wage is. So when you look back at the IPCA and what it regulates, it regulates not the above-the-line reconciliation but rather the deduction from wages or final compensation. We apply state and federal income taxation on that final wage once the reconciliation has been done. I think that Judge Conelli, a very, very smart judge, been in front of him now for four years, hopefully this is the last of this case, he referenced the cash advance regulation, I think, to support one of his contentions in the decision. I think it was an unfortunate reference. Once he dug into it, once he addressed it, he realized that this is not a cash advance arrangement, cash advance repayment arrangement, and I think that's why he issued his decision focusing on that cash advance. But frankly, I think if he had stepped back and perhaps had a little bit more time to consider the issues, he probably would have disposed of the case on the IWPCA basis. Turning to the cash advance arguments that the appellant makes, if I filed them correctly, what Judge Conelli recognizes that the tile shop doesn't require repayment, doesn't require repayment of any draw balance, at no time. And while Mr. Bogarelli would like this court to basically ignore the first three pay period payments to a tile shop sales associate as being irrelevant to this litigation, they are very relevant. They are draw payments. They're $1,000 every pay period. The only different characteristic of those payments is that the tile shop agrees as part of their contract with their employees that they won't reconcile commissions against those draws. Those are basically guaranteed, but they are draws. They're $1,000. They compensate the employee as your Honor recognized. They provide a mechanism to ensure that a minimum level of compensation is provided even in those first few pay periods. So that's an addition that this is in fact not a cash advance arrangement. It's a guaranteed payment to an employee. There is no expectation of repayment and no expectation that that negative balance be carried forward after those first three pay periods. And despite Mr. Bogarelli's contention, all of the payments made to tile shop sales associates, all draw payments, are always at risk of loss, always at risk of not being satisfied by the employee's performance. And therefore, the tile shop is at risk of not recouping those payments. That's not what a cash advance is. A cash advance requires repayment of the consideration that was provided, and Judge Barrett, as you recognize, consideration, I'm sorry, payment or something of value before the consideration is actually provided. In this case, what we have is, and another reason why Judge Kennelly's decision is supported by the record evidence, is that Judge Kennelly observed that the payment is, the draw payment is made following the employee's performance of service, right? So the employee works for a pay period, they perform services, they're paid that draw amount. In circumstances where the employee, for example, takes a day off, an unpaid non-vacation PTO day, they're paid on a pro-rata basis. That draw is paid on a pro-rata basis. It's not the lump sum payment. But rather, it's paid to reflect the service, the hours, the days that the employee performed services for and on behalf of the tile shop. Right, but assuming the hours are worked, this isn't a pure commission-based compensation system in that the company guarantees that $1,000 per pay period wage or compensation. It doesn't ever drop below that. That's correct, Your Honor. And in that respect, it's almost like a salary, except that the tile shop treats that as a draw that they can offset future earned compensation against. But at all times, it's paid retrospectively. At all times, it's paid after the employee has performed services. It's paid in proportion to the days, the hours that the employee performed services for and on behalf of the tile shop. Right. So formally and functionally, it's a $2,000 a month salary plus whatever you earn above that amount in commissions. Correct. And what Judge Connelly found really controlling and dispositive of his decision was that the final payments that the tile shop makes to an employee. So for example, I decide I want to go to law school. I'm not very good at selling tile. And I give my two-week notice. I can go to tile shop and twiddle my thumbs for those 10 work days and generate no activity, no sales activity, make no sales, come up with a huge goose egg in terms of my commission or incentive compensation column, but still get my $1,000. And once I have left the tile shop, I've got $1,000. That pay period, I may have other negative draws. Those draws also, unlike a cash advantage repayment arrangement, are not recovered by the tile shop. I didn't understand Mr. Bogarelli's argument that there's a regulation following the cash advance 15% deduction limitation that requires the company to have a written agreement or allows the company to have a written agreement with an employee to recover a cash advance payment. We don't have that. I think that's our argument. That's another factor which I think supports Judge Cannelly's decision, that we had no time to seek it. And while we could have it, this in fact was a cash advance arrangement, or even if it kind of looked like it, there is authorization for us in the IDOL regs to actually have a recovery mechanism through that final paycheck. We don't do that. Another reason why this is not a cash advance repayment arrangement, but rather a draw reconciliation mechanism designed to arrive at a final wage for this employee. I found it surprising that no Illinois cases had defined cash advance. Well, I was surprised as well, and that's why I started my remarks. No disrespect to Judge Cannelly, I have a lot of respect for him, but because he commented on that regulation, we've spent a lot of time and energy talking about what a cash advance is. And again, I think Judge Sykes hit it right in the head. This case was disposed of first and foremost because the IWPCA doesn't apply. If it did apply, these are not cash advance arrangements. Unless the court has any further questions of my remarks. Thank you. Thank you. Mr. Bogarelli, how much time? There you go. Thank you. Defendant, the simple fact is here, your honors, is that, well, it may sound counterintuitive. The law says these are cash advances. Specifically says that when you forward money, and these are sidearm brief, and you repay them on future unearned commissions, that's a cash advance. FLSA regulations describe this exact situation and say that's an advance. They also say the terms that they use, draw and advance, mean one and the same. The arguments that defense makes about taxes being paid, they do above the line. Well, the law says, and the sidearm brief, you do that with cash advances. You have to tax it when paid, not later. I know it does sound counterintuitive at times, and with all due respect to district court, I know they worked hard, but they turned this around. Simply, the law requires some of these things. Defense counsel was saying they didn't understand the specific argument about the agreement. What that is, they don't have an agreement. They can't cash advances, so you can't recover them. The fact that it may not make sense that you can't always recover them, but the law is clear. The Paradigm case, this is a Steger case, says you don't get to recover them, just like they didn't get to recover them. They treated these exactly as cash advances. They're telling this court it's something different. We're evening out, but simple fact is, cash advances are for a long time, in this type of situation, considered a payment plan. You're making advances that are off future earnings. That is the matter, that they call them something else. The purpose may be to even things out, but they still are subject to these regulations. I see I'm out of time, unless there's any other questions. Thank you. Our thanks to both counsel. The case is taken under advisement. Thank you.